Anderson et vir *v.* Schroeder Monumental Works
(et al., Appellant).

Argued October 28, 1946. Before BALDRIGE, P. J.,
RHODES, RENO, ROSS and ARNOLD, JJ. (HIRT and DITH-
RICH, JJ., absent).

*J. Webster Jones* and *Harry E. Keller,* for appellant.

*Wesley H. Caldwell,* with him *Roper & Caldwell,* for appellees.

OPINION BY BALDRIGE, P. J., November 20, 1946:

These appeals are from awards granted for total disability and a death claim. Andrew J. Anderson filed a petition under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 P.S. 1201, claiming compensation for total disability resulting from silicosis contracted while in defendant's employ. Anderson was employed by Schroeder Monumental Works as a granite cutter from April 23, 1936, to December 24, 1942. His next work was for the Hunter Manufacturing Company boring tetryl powder out of shells, from January 4, 1943, to January 16, 1944, when he became totally and permanently disabled. He died November 7, 1944, pending the action of the Board. The widow thereafter filed a petition claiming compensation for her husband's death due to silicosis. The Board found upon sufficient evidence "that death was caused solely by silicosis, definitely distinguished from a contributory or accelerating cause: Sec. 301(e). The record does show that the decedent inhaled tetryl powder while in the employ of the Hunter Manufacturing Co. but the medical testimony conclusively proves that the inhalation of the tetryl powder was not the cause of decedent's silicosis. The tetryl powder was a contributory cause of total disability and it hastened the progress of the decedent's disease, but there is no evidence that it was the cause of death."

An award was made under each petition and affirmed by the learned court below. These appeals were taken by the Coal Operators Casualty Company, the carrier for Schroeder Monumental Works, under policies expiring July 13, 1943. The appellant raises four questions, which we will discuss, each of which is resolved against it.

1. It denies liability for the reason that the total disability benefits as distinguished from death benefits, are barred because they did not occur within one year after the date of decedent's last exposure, to wit, December 24, 1942. Section 301 (c) of the 1939 Act supra, 77 P.S. 1401, provides:

"(c) Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational *disease* is peculiar to the occupation or industry in which the employee was engaged, . . . *and occurring within one year* after the date of his last employment in such occupation or industry." (Italics supplied.)

As the learned court below aptly states: "A careful reading of the statute shows that the criterion is the date when the disease occurred and not the date when total disability began. In view of the medical testimony, it is clear that decedent had contracted the disease within the one year's period of limitation as required by the statute."

Decedent was ill and complained of a dry cough in June of 1943. X-rays taken January 12, 1944, disclosed he was suffering from silicosis in the third stage with accompanying tuberculosis. Claimant's medical testimony showed that silicosis is a progressive disease and must necessarily have existed for some time before reaching the third or final stage. The evidence fully supports the finding of the Board that the silicosis was contracted in the employment of Schroeder Monumental Works or within a year thereafter.

2. Appellant's next contention is that silicosis was not the sole cause of death, and that inhalation of tetryl powder during decedent's employment with the Hunter Mfg. Co. played a prominent part in causing the disability and death. Dr. Bond, claimant's medical witness, did testify that inhalation of tetryl powder by the decedent while in the employ of the Hunter Mfg. Co. "irritated" the silicosis, "advanced it" and "flared the condition up", "progressed it more rapidly, more fulminating", but this witness expressed the opinion that the decedent would have died of silicosis in any event, that the inhalation of tetryl powder simply hastened his death. Under Section 301 (e) of the Act of 1939, 77 P.S. 1401, supra, if silicosis is merely contributory to death or a concurrent accelerating cause, recovery is barred. *Stauffer v. Hubley Manufacturing Co.,* 151 Pa. Superior Ct. 322, 30 A. 2d 370. In *Treaster v. North American Refractories Company et al.,* 156 Pa. Superior Ct. 567, 572, 573, 41 A. 2d 53, we stated that "where the silicosis is itself the active agency which terminates the life, there is compliance with the statute, notwithstanding the victim displayed disorders unconnected with the occupational disease which might in themselves have produced death had they been allowed to traverse their expected course. In the latter event, the disease or weakness is a passive factor without effect in depriving the silicosis of its character as the sole producing cause of death."

The evidence here shows, as it did in *Roschak et ux. v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 231, 42 A. 2d 280, that decedent's total disability and death were caused primarily and solely by silicosis within the meaning of our statute.

3. The appellant has not persuaded us that the inhalation of tetryl powder by decedent while in the employ of Hunter Mfg. Co. constituted an accident making

the disability and death compensable under the Workmen's Compensation Act rather than under the Occupational Disease Act, and there is no finding to that effect. Certainly we cannot declare as a matter of law that such an event was an accident. Appellant is not relieved of liability on this ground.

4. We come now to the appellant's last position. It claims that it is not liable under its policy for either disability or death because disability from silicosis did not occur until January 16, 1944, or six months after its policy with decedent's employer expired, as death did not take place until sixteen months after its policy with Schroeder expired. The theory is again relied upon that the date of disability rather than of the exposure or occurrence of the disease is the pivotal factor in determining the liability of appellant. The appellant's policies in force from July 13, 1939, to July 13, 1943, contained the following provision under its Standard Pennsylvania Occupational Disease endorsement:

"2. The Insuring Company hereby agrees to assume the whole liability of this Insured Employer under the Pennsylvania Occupational Disease Act of 1939 and all Laws amendatory thereof which may be or become effective while this Policy is in force, without any exception, qualification or limitation."

Section 301 (g) of the 1939 Act, supra, 77 P.S. 1401, makes the following provisions:

"(g) The employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, . . . the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more after the effective date of this Act . . ."

As above observed, it is the exposure that gives rise to the ultimate liability, but no compensation is payable until the disability becomes total: *Agostin v. Pittsburgh Steel Foundry Corporation,* 157 Pa. Superior Ct. 322, 43 A. 2d 604, affirmed 354 Pa. 543, 47 A. 2d 680. There is sound reason for the extension of the time that protection is afforded for an occupational disease resulting from exposure to unhealthful conditions over a long period, as disability often does not manifest itself until after the employment has ceased: *McIntyre v. Lavino & Co. et al.,* 344 Pa. 163, 167. Mr. Justice Stern, speaking for the Court in that case, said at page 169: "Surely it was not intended that, if an occupational disease arising in the course of the employment culminated in a disability which manifested itself after the employment had ceased, the disability could not be the subject of compensation, for otherwise, after an employee had been exposed to the hazard for years and the seeds of occupational disease had been sown in his body, his employer could discharge him and thus avoid compensation liability for the resulting disability which might reveal itself shortly, or even immediately, thereafter." To uphold appellant's contention we would leave the claimant without any remedy in many cases. We are confident that no such result was contemplated by the Act which must be liberally interpreted as remedial legislation: *Toffalori v. Donatelli Granite Co.,* 157 Pa. Superior Ct. 311, 43 A. 2d 584.

The problem of liability of successive insurers under occupational disease contracts has received various solutions. The matter is largely controlled by statute. Under our statute the insurer's liability attached when the employee was afflicted with silicosis. At that time the appellant's policy last issued was in force. Its expiration before the disease caused death did not discharge the existing obligation of the carrier. Although *National Products Co. v. C. C. P., etc.,* 123 N. J. L. 522, 10 A. 2d

148, upholds appellant's contention, it is not persuasive as the New Jersey statute differs from ours.

The judgment is affirmed.