## Kozak, Guardian, *v.* Lehigh Valley Coal Company et al., Appellants.

Argued March 25, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*S. W. Rhoads* and *Jonathan C. Valentine,* for defendant coal company, appellant.

*S. H. Torchia,* Chief Assistant Counsel, with him *Anthony F. X. D'Iorio,* Assistant Counsel, *Ralph H. Behney,* Chief Counsel for Pennsylvania Occupational Disease Fund, and *T. McKeen Chidsey,* Attorney General, for Commonwealth.

*F. Brewster Wickersham,* with him *Metzger & Wickersham, Huette F. Dowling* and *Max Rosenn,* for plaintiff, appellee.

*Arthur H. James,* for Glen Alden Coal Company, intervening appellant.

*Thomas L. Kennedy, Jr.,* with him *George Jerko, Joseph Loughran, Anthony Cavalcante* and *Samuel Krimsley,* for Pennsylvania Districts of United Mine Workers of America, amicus curiæ.

*Earl G. Harrison,* with him *Wm. A. Schnader* and *Schnader, Harrison, Segal & Lewis,* for Coal Operators Casualty Company et al., interested parties, under Rule 61.

OPINION BY DITHRICH, J., July 15, 1949:

The question involved in this appeal is whether an employe who had terminated his employment prior to the acceptance by the employer of the provisions of Article III of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1401, is entitled to the benefits of its provisions.

The referee awarded compensation; the Board reversed the referee and vacated the award; the Court of Common Pleas of Luzerne County reversed the Board and reinstated the award. The facts as found by the referee have been agreed to by all the parties in interest

and there is no question as to the competency or sufficiency of the evidence on which the findings were made. Briefly stated they are as follows: Fred Kozak left the employ of the Lehigh Valley Coal Company April 3, 1943. Prior thereto the coal company, upon approval by the Governor of the Occupational Disease Act, had promptly rejected it in the manner provided by section 302 thereof. It did not accept the elective compensation agreement of the Act until May 31, 1946. Kozak, who had been employed by the Bethlehem Steel Company at its Steelton plant from September 8, 1943, to November 10, 1945, during which employment he was not exposed to the dust of silicon dioxide, on August 10, 1946, became totally disabled "as a direct result of silicosis contracted while he was . . . an employe of the defendant company." Prior thereto he had become mentally ill and his wife was appointed his guardian.

The referee concluded "That both the claimant and the defendant were bound by the provisions of Article III of the Pennsylvania Occupational Disease Act." The Board affirmed the referee's findings of fact but vacated his conclusions of law and the award and made the following conclusions:

"1. The claimant and the defendant were not bound by the provisions of Article III of the Occupational Disease Act of 1939 as amended.

"2. That since the claimant was employed by the defendant solely during the period of rejection of the Occupational Disease Act and became disabled after the defendant's acceptance, the claimant is not entitled to receive compensation."

Article III, titled "Elective Compensation," section 301 (a), provides, in part, as follows: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act, compensation for disability or death of such employe, caused by occupational disease

arising out of and in the course of his employment, shall be paid by the employer, . . ." Section 302 (a), 77 PS §1402, provides a method of rejection, and the provisions thereof were complied with by the employer.

In addition to those of the appellants and the appellee, briefs have been filed under Rule 61 on behalf of the Pennsylvania Districts, United Mine Workers of America, by the Coal Operators Casualty Company, the Glen Alden Coal Company, and several other coal and casualty companies, all of which are interested in the question involved.

The case turns on whether liability for compensation for total disability resulting from silicosis depends on the effective date of the Occupational Disease Act or on the effective date of its acceptance or rejection by the employer. The learned court below held that since the employer had accepted the Act before the employe became totally disabled, although he had prior thereto left its employ, he nevertheless was entitled to compensation.

While recognizing that the facts in *McIntyre v. E. J. Lavino & Co.*, 344 Pa. 163, 25 A. 2d 163, and *Anderson v. Schroeder Monumental Works*, 159 Pa. Superior Ct. 620, 49 A. 2d 631, principally relied upon by the learned court, "are not in point with the instant case," it was of opinion "nevertheless" that "the Courts are in accord in holding that compensation is payable only when disability becomes total." That is unquestionably true, but only where the distinguishing fact, to wit, acceptance of the Act as part of the contract of employment, exists. In the *McIntyre* case, supra, the Supreme Court said at pages 168, 169:

"When employer and employe accept compensation legislation their relation in regard to it becomes contractual and their rights are to be determined under its provisions: Liberato v. Royer & Herr, 81 Pa. Superior Ct. 403, 407, 408, affirmed 281 Pa. 227, 126 A. 257. Since,

therefore, McIntyre was in the employ of defendant on the effective date of the Occupational Disease Compensation Act, *and the parties did not, then or thereafter, express their intention not to be bound by it,* they voluntarily submitted themselves to its terms, including the provision of section 3, so that defendant assumed thereby the duty of paying compensation to McIntyre if disability from occupational disease should subsequently reveal itself. *Had McIntyre's employment ceased before January 1, 1938* [the effective date of the earlier Occupational Disease Act], *a different question would be presented."* (Italics supplied.)

And while we said in the *Anderson* case, supra, at page 625, "There is sound reason for the extension of the time that protection is afforded for an occupational disease resulting from exposure to unhealthful conditions over a long period, as disability often does not manifest itself until after the employment has ceased: McIntyre v. Lavino & Co. et al., 344 Pa. 163, 167," the claimant there was an employe of the defendant from October 1, 1939, the effective date of the Act, to December 24, 1942, during which period the Act was a part of the contract of employment.

In *Keim v. Cambria Fuel Co.,* 152 Pa. Superior Ct. 530, 33 A. 2d 61, another case arising under the Occupational Disease Compensation Act of 1937, P. L. 2714, which went into effect on January 1, 1938, this Court, in an opinion by KELLER, P. J., said at page 532:

"The Workmen's Compensation Act and its cognate statute, the Occupational Disease Compensation Act, are based on an existing relation of master and servant, or employer and employee; and that relation had to subsist at the time they became effective, in order to create the new contractual relationship established by their *acceptance, express or implied,* of those acts. The procedure established under their provisions is not applicable to cases where no relationship of employer and

employee was in existence 'when they became effective. Section 4 of the Occupational Disease Compensation Act limits its application to cases 'when an employer and employe shall be subject 'to the provisions of article three of the Workmen's Compensation Act as therein provided'; and section 301 of the Workmen's Compensation Act limits its provisions to cases *'when employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act'.''* (Italics supplied.)

The latter quotation from section 301 (a) of the Workmen's Compensation Act is identical with the language in section 301 (a) of the Occupational Disease Act.

The judgment is reversed and here entered for defendant.