## Overko v. Glen Alden Coal Co. et al.

*Thomas L. Kennedy, Jr.*, for claimant.

*J. H. Oliver, Franklin B. Gelder* and *Gilbert S. McClintock*, for defendants.

*Elwood H. Jones*, for Commonwealth.

LEWIS, J., for court en banc, February 2, 1950.—
This matter comes before the court on an appeal by the
Glen Alden Coal Company and the Commonwealth of
Pennsylvania from the decision of the Workmen's
Compensation Board.

Claimant, Stephen Overko, filed a claim for compensation under the Occupational Disease Act of June
21, 1939, P. L. 566, as amended May 18, 1945, P. L.
661, sec. 1, alleging total disability as a result of anthraco-silicosis.

Claimant worked in various collieries from 1913 to
1938, and for defendant, Glen Alden Coal Company,
from 1938 to July 2, 1946, on which date he ceased
work. He has not since worked. Claimant alleges that
he became totally disabled on March 26, 1947.

A hearing was held on May 24, 1947, before Joseph
P. Olexy, referee for the second compensation district.
In his opinion of July 24, 1947, the referee found as a
fact that claimant had become totally disabled on
March 26, 1947. He also found as a fact that "claimant's wages exceeded the maximum for compensation
purposes." Therefore, he awarded claimant maximum
total disability compensation payments under the Occupational Disease Act to be paid at the rate of $20 per
week, but not to exceed the total of $4,000.

On September 16, 1947, the employer, Glen Alden
Coal Company, filed a petition with the Workmen's
Compensation Board for modification of this award
alleging that under the act, claimant's average weekly
wage at the time of his disability on March 26, 1947,
was not the maximum as the referee had found, but
was only $17.01, thus entitling him to compensation
of only $11.34 per week.

The petition for modification was referred to Referee Olexy, and hearing on said petition was held on
November 12, 1947. Thereafter, Referee Olexy dis-

missed defendant's petition and upheld the award of $20 per week, finding claimant's average weekly wage was $33.49.

From this decision defendant appealed to the Workmen's Compensation Board.

The Workmen's Compensation Board dismissed defendant's appeal and affirmed the referee's award of $20 weekly. In so doing, the Workmen's Compensation Board substituted for the referee's finding a finding of fact that claimant's average weekly wages were $44.63.

Defendants, Glen Alden Coal Company and Commonwealth of Pennsylvania, took this appeal from the action of the Workmen's Compensation Board.

There is no dispute in the instant case as to claimant's right to compensation under the Occupational Disease Act, supra. No appeal was taken from the referee's finding that claimant was totally disabled. The only question before the court is the propriety of the amount of weekly compensation awarded to claimant. Defendants contend that claimant's average weekly wages were not sufficient to entitle him to an award of $20 weekly.

The average weekly wage of claimant must be computed in accordance with the provisions of the Occupational Disease Act. The first paragraph of section 309 (d) of the act provides:

"If at the time of the disability the wages are fixed by the day, hour, or by the output of the employe, *the average weekly wage shall be the wage most favorable to the employe,* computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the accident, or in case the employe receives wages monthly, or semimonthly, by dividing by thirteen the total wages of

said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive calendar months in the year immediately preceding the accident." (Italics supplied.)

Defendants contend that claimant's wages should be computed upon his earnings during the period of one year prior to the date of his total disability, to wit, March 26, 1947. Yet, in computing claimant's wages, defendants took the earnings from March 1, 1946, to March 1, 1947, which, in quarterly periods, are as follows: (This includes vacation pay—$87.50).

Total first quarter earnings........$221.12
Total second quarter earnings...... 119.31
Total third quarter earnings....... ——
Total fourth quarter earnings...... ——

Defendant, taking the most favorable of these quarters (the first) computes the average weekly wage at $17.01, and contends claimant is only entitled to $11.34.

The court notes in passing that defendants mistakenly computed the 52-week period as running from March 1, 1946, to March 1, 1947, and feels that since defendants contend that the 52-week period must be that preceding the date of total disability, they should have computed it from March 26, 1946, to March 26, 1947.

However, this discrepancy does not seriously affect the primary question before the court.

On the other hand, the Workmen's Compensation Board computed claimant's earnings during the period of one year prior to the last day he worked, to wit, July 2, 1946. Claimant's earnings for the year of July 1, 1945, to July 1, 1946, in quarterly periods are as follows:

Total first quarter earnings........$512.91
Total second quarter earnings...... 580.17

Total third quarter earnings...... 443.52
Total fourth quarter earnings..... 215.36

The board, then taking the second quarter as the most favorable, held that claimant's average weekly wages were $44.63, which entitled him to compensation of $20 weekly.

Thus, the question before this court is which method of computing the average weekly wages of claimant is correct. Is the statute to be interpreted to mean one year prior to the date of total disability, here March 26, 1947, or one year prior to the last day of work (or exposure), here July 2, 1946?

The record discloses that for the year preceding March 1, 1947, claimant worked only until July 2, 1946. As claimant testified, he was unable to work because of his physical condition caused by his occupation. Thus, for eight months (two thirds of the entire year), claimant was able to earn nothing. Moreover, for the other four months of that year, claimant was only able to work part of the time, and the record of earnings shows that his wages for those four months were not equal to his wages when he was physically well. Actually, the year should precede March 26, 1947.

Defendants would have us compute claimant's average weekly wages during a period when claimant's earning power was severely curtailed.

The legislature surely never intended to discriminate between those becoming totally disabled on the last day of their employment and others who become totally disabled one year after leaving the occupational disease hazard. The former would receive compensation based upon the best quarter in the last year of active employment. The latter would be penalized for trying to work while sick.

In a hypothetical situation, let us assume that claimant had been paid a flat wage of $50 per week.

He quit work on July 2, 1946, and became totally disabled on March 26, 1947. The case would then have come under section 309(a) of the Occupational Disease Act, which provides:

"(a) If at the time of the disability the wages are fixed by the week, the amount so fixed shall be the average weekly wage."

In that instance, if we were to compute compensation payments as defendant contends, the wage of claimant at the date of total disability, March 26, 1947, would be nothing per week.

We believe that the legislature intended this to mean his weekly wage at the time he last worked. In the hypothetical case, we feel the legislature intended his average weekly wage to be $50 per week.

According to the work records, claimant did not work one full quarter in the year prior to March 26, 1947. There is no way to compute the weekly wages for this claimant, unless we adopt the reasoning of the Workmen's Compensation Board.

The intent of the legislature is to use a full quarter, at least one that would furnish a figure that could reasonably and fairly be construed as earnings for 13 weeks.

The second paragraph of section 309(d) indicates clearly such intention on the part of the legislature. However, this provision cannot be applied to a claim arising from anthraco-silicosis, asbestosis or silicosis because section 301(g), as amended, provides:

"(g) The employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, that when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, asbestosis or any

other occupational disease . . . the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more after the effective date of this Act; . . ."

As further evidence of the legislature's intent, we note in section 309 (e), there was provided a method to determine the average weekly wage in seasonal occupations, to wit:

". . . *unless* it be shown that during such year, by reason of exceptional causes, *such method* of computation *does not ascertain fairly the earnings of the employe, in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings.*" (Italics supplied.)

Defendants rely in part on the case of McIntyre v. E. J. Lavino & Co., 344 Pa. 163. As pointed out by the board, the date of that opinion discloses that it was decided under the Occupational Disease Act of July 2, 1937, P. L. 2714. Section 3 of the 1937 Act provides:

"The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident."

This provision was not included in the 1939 Act. Thus, we do not feel compelled to so hold in the instant case.

The legislature evidently realized that this section was impracticable, unreasonable and would work an injustice to any claimant suffering from silicosis, anthraco-silicosis, asbestosis or any other occupational disease which developed to a point of disablement only after five or more years, and therefore, eliminated this provision in the Act of 1939.

After a study of the entire record and of the controlling statute, we conclude the claimant's average

weekly earnings must be computed on the basis of his earnings for the year prior to July 2, 1946, the last day he worked (his last exposure to the hazard), and that the Workmen's Compensation Board was correct in affirming the award of $20 per week.

The problem here is not one of ascertaining the point of time at which the total disability occurred. Claimant's right to compensation became complete on March 26, 1947, when he became totally disabled. However, employer's liability for compensation payments attached at the time of claimant's last exposure to the hazard of the occupational disease on July 2, 1946. See Gaydosh v. Richmond Radiator Co. et al., 164 Pa. Superior Ct. 154.

The language of the statute itself quoted above states *that the average weekly wage should be the most favorable to the employe,* computed as therein set forth. The difficulty arises in interpreting the words "fifty-two calendar weeks immediately preceding the accident."

Although there was an entirely different question before the court, the Superior Court in 1945 used this language: "The development of silicosis in an employe, in a sense, is the accident. . . ." See Agostin v. Pittsburgh Steel Foundry Corp. et al., 157 Pa. Superior Ct. 322, 323, affirmed in 354 Pa. 543.

It is apparent that in a case arising under the Occupational Disease Act, total disability often is not the result of an "accident", as it is commonly understood, the date of which is easily ascertained. Rather, total disability which entitles an employe to compensation under this act is often the culmination of years of exposure to an occupational hazard. Therefore, since the language of the act itself is not clear, this court feels that it would be unjust and opposed to the intent of the legislature to compute claimant's compensation as defendants contend.

We believe the legislature improvidently uses the word accident in section 309(d) insofar as it would apply to anthraco-silicosis.

The framers of the statute prepared an act intended to provide relief for those suffering from various kinds of occupational disease. The legislature distinguishes silicosis, anthraco-silicosis, asbestosis or other similar occupational disease which developed to a point of disablement only after an exposure of five or more years from the other occupational diseases covered by the act.

However, it is apparent that the legislature in section 309 of the act neglected to distinguish the different diseases when they considered the method of determining the average weekly wages to which a claimant is entitled. Therefore, the confusion in the present case. Although the act has been amended at least twice, the wording of the statute has never been corrected or clearly stated.

To aid us in our interpretation, we have recourse to the Statutory Construction Act of 1937, P. L. 1019, which provides:

"Section 51. Construction of Laws; Legislative Intent Controls.—The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"Section 52. Presumption in Ascertaining Legislative Intent.—. . . the courts may be guided by the following presumptions:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable; . . .

"Section 58. Rule of Strict and Liberal Construction.—. . .

"All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

Where a provision in a statute is fairly susceptible to two constructions, it is proper to consider the injustice, unreasonableness and inconvenience that would follow a particular construction. See Toffalori v. Donatelli Granite Co. et al., 157 Pa. Superior Ct. 311 at 315.

It is also proper that we adopt a rule of liberal construction as a guide in order to effectuate the remedial purpose of the act. See Toffalori v. Donatelli Granite Co., supra.

This is humane legislation. The statute should be liberally interpreted. It should be interpreted in a way which would best effectuate legislative intent.

As was stated supra, all agree that claimant is entitled to an award. The only question before this court is the method of determining an average weekly wage. Keeping in mind the object and purpose of the legislation, we are of the opinion that the average weekly wage must be computed by taking the most favorable quarter of the 52-week period preceding July 2, 1946.

The appeal of defendants is dismissed and the order of the Workmen's Compensation Board is affirmed.