Dupree *v.* Barney, Appellant.

Argued June 13, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Fred B. Sieber,* with him *Sieber & Lund,* for appellant.

*William W. Knox,* with him *Knox, Weber, Pearson & McLaughlin,* for appellee.

OPINION BY WATKINS, J., September 20, 1960:

This workmen's compensation appeal is from the judgment of the Court of Common Pleas of Erie County, in favor of the claimant-appellee, McKinley Dupree. The claimant, a migratory farm worker, was employed by the appellant-defendant, Frank H. Barney, on a farm near Girard, Erie County, Pennsylvania, where he worked on a potato grading machine, grading potatoes, putting them in bags and stacking them in a warehouse. He was being paid $1 per hour. He first went to work for the defendant as a potato picker,

working in Sherman, New York, Findley Lake, New York and finally in Girard, Pennsylvania.

The employer supplied the claimant and other migrant workers with living quarters on the property, in a shanty located one-third mile from his work. At first there were four workers in the shanty but at the time of the accident it was occupied by three. The straw for the mattresses on the bunk beds was supplied by the employer and the shanty was illuminated by a lighted wick or rag inserted in a container filled with kerosene. The claimant, on the night of January 19, 1956, was lying on his bunk reading a magazine by the kerosene light, when it either exploded or fell upon him, setting the bunk on fire and causing the claimant serious burns of his chin and upper arm. Skin grafts were necessary and although the burns healed, he was left with scar tissue on the right arm pit which limited the motion of the arm. The referee awarded benefits on a fifty per cent disability basis. The Workmen's Compensation Board sustained the award and the Court of Common Pleas of Erie County affirmed the board and entered judgment for the claimant.

Although there was some argument by the claimant that the grading and stacking of potatoes was not agricultural labor, it is not necessary for us to consider this point as we think it clear that he was covered by the Workmen's Compensation Law. This, by virtue of the employer's voluntary election to be so covered on January 25, 1937, and this election accepted by the board. His election was made under the provisions of the Act of July 18, 1935, P. L. 1316, where coverage of agricultural workers was made optional by the following language: "Be it enacted that nothing contained in any article of an Act entitled the Workmen's Compensation Act of 1915 shall apply to or in any way affect any person who, at the time of injury, is engaged

in domestic service or agriculture: provided however, that in cases where the employer of any such person shall have, prior to such injury, by application to the Workmen's Compensation Board, approved by the Board, elected to come within the provisions of the Workmen's Compensation Act of 1915 and the supplements and amendments thereto, the provisions of this supplement shall not apply."

There is no question but that the employer applied for and secured permission to be covered by the Act and was so covered until the legislature passed the Act of 1937, June 4, Section 104, P. L. 1552, 77 PS §22. This Act repealed the Act of 1935 generally and did not re-enact the optional provision, and it was not until the Act of June 21, 1939, P. L. 565, 77 PS §1a, effective July 1, 1939, that optional coverage for agricultural workers was re-enacted.

There can be no doubt that from the effective date of the Act of 1937, supra, to the effective date of the Act of 1939, supra, employers engaged in agricultural pursuits could not exercise any election for workmen's compensation coverage, because during that period no such option existed. However, this employer had exercised the option when it was in effect and as a result of his election, the relationship between this employer and his employees became contractual, and although the legislature " ' may at any time alter, amend or repeal such [procedural] provisions without offending constitutional restraints; . . .' " *Beard, Inc. v. St. Bd. of Undertakers,* 387 Pa. 261, 128 A. 2d 49 (1956), such action cannot abrogate vested contractual rights. *Liberato et al. v. Royer & Herr et al.,* 81 Pa. Superior Ct. 403 (1923); *Mavroulias v. Mugiana et al.,* 155 Pa. Superior Ct. 573; 39 A. 2d 263 (1944); *Agostin v. Pittsburgh Steel Fdy. Corp.,* 354 Pa. 543, 47 A. 2d 680 (1946); *Anderson v. Sunray Electric, Inc.,* 173 Pa. Su-

perior Ct. 566, 98 A. 2d 374 (1953); *Kozak v. Lehigh Valley Coal Co.*, 164 Pa. Superior Ct. 564, 67 A. 2d 724 (1949).

It may be trite to again point out that the Workmen's Compensation Law is a remedial Act passed for the benefit of workers, authorized by the police powers of the State and is frequently referred to as a humanitarian measure. The Workmen's Compensation Act was passed for the purpose of protecting workmen. *Taylor v. Ewing*, 166 Pa. Superior Ct. 21, 70 A. 2d 456 (1950). For this purpose it must be liberally construed.

The legislature, after the constitution was amended to permit the adoption of workmen's compensation, decided on a system of elective compensation which would create an implied contract between the parties. The system has worked well and both employers and employees now take for granted that workmen's compensation is an integral part of the employment contract.

As was well said by Mr. Justice PATTERSON in his concurring opinion in *Agostin v. Pittsburgh Steel Fdy. Corp.*, supra, at page 553, "This Court has repeatedly held that Workmen's Compensation is a system of compensation not imposed by law but established by agreement of the parties implied from their failure to express an intention to the contrary . . . In legal effect the parties, by failing to express an intention not to be bound by the Act, incorporated its terms into their contract as if expressly written therein . . . Such right is contractual rather than a right or benefit conferred by the statute itself; and repeal of the statute cannot abrogate such vested contractual right. Any conclusion to the contrary would shake the very foundations on which the validity of much of our system of Workmen's Compensation depends."

Section 302(a) of the Act of June 2, 1915, P. L. 736, as amended, 77 PS §461, provides: "In every contract of hiring made after December 31, 1915 . . . it shall be conclusively presumed that the parties have accepted the provisions of Article three of this Act, and have agreed to be bound thereby, unless there be, at the time of the making . . . an express statement in writing, from either party to the other that the provisions of Article three of this Act are not intended to apply."

It is clear, then, that the relationship of employer and employee engaged in the regular course of the employer's business, as regards workmen's compensation, is contractual and acceptance of the Act is conclusively presumed unless the written statement to the contrary has been filed as required by the Act. Once this implied contract comes into being it can only be terminated as follows: "Any agreement between employer and employe for the operation or non-operation of the provisions of article three of this act may be terminated prior to any accident, by either party, upon thirty days' notice to the other in writing, if a copy of such notice, with proof of service, be filed in the department, as provided in section three hundred and two of this article. 1915, June 2, P. L. 736, art. III, §304; 1937, June 4, P. L. 1552, §1; 1939, June 21, P. L. 520, §1." 77 PS §482.

At the time of the adoption of the Workmen's Compensation Law agricultural labor was exempt from coverage. This was due to the theory that the hazards of such employment were not so great as to indicate such a need for the benefits that would offset the economic burden of coverage that would be placed on agriculture. However, modern farming has become big business and mechanization has so increased hazards that a demand for a right to such coverage developed, at least in a segment of agriculture. To meet this de-

mand and this need the Act of 1935 was adopted to permit farm employers the option to come outside the exemption and under the Act. It should be pointed out that only the employer's election could give his employees the benefits of the Act designed for their protection.

His election and its acceptance by the Board brought him within the provisions of the Act. It also brought his employees under the coverage of the Act and if they did not want the protection that desire must then have been expressed in writing as required by the Act. The farm employer who so elected, and his employees who failed to reject, were then in exactly the same position as other employers and employees covered by the Act and were contractually obligated to each other and thereafter every contract of hiring made by this employer included the implied contract of workmen's compensation.

It is true that the agreement is a separate contract by the employer with each employee, present and future. *Zimmer v. Casey*, 296 Pa. 529, 146 A. 130 (1929), but it is equally true that it took an amendment of the Constitution of Pennsylvania and the passage of the Workmen's Compensation Law to make possible the right to execute such a contract for employers and employees generally and it took the required election by the employer as set forth in the Act of 1935 to make it possible for this employer to get out from under the agricultural exemption and bring himself and his employees under the protection of the Act and the right to make workmen's compensation a part of the hiring contract.

As the Workmen's Compensation Law was designed for the protection of workmen, it has been liberally construed in favor of that protection. So, the conclusive presumption of the contract, unless positive action

as required by the Act is taken by either party, has been interpreted to mean that such rejection must be made as to each employment contract.

The appellant attempts to apply this reasoning to the farmer's election to come under the Act. The election provided in the Act of 1935 is an entirely different matter. The conclusive presumption of a contract was designed by the legislature in an elective system of compensation to weigh that election in favor of workmen's compensation. But even after acceptance, the right to reject was permitted to each party in every contract of hiring.

We must construe the problem presented by the Act of 1935 and the Act of 1937 with the protection of the workmen always in mind. The farm employer and the farm employee had no compensation rights at all until the Act of 1935 and then only subject to the volition of the employer. The employer decided to make the election. Once under the Act he and his employees had the choice in each contract of hiring of accepting or rejecting the Act. Most certainly the legislature, in amending this humanitarian act by the Act of 1935 to permit farm employers to make an election and so provide protection for farm workers, never intended, with the passage of the Act of 1937, that this election could be taken back or that a new election must be made with the passage of the Act of 1939, when under the provisions of the Workmen's Compensation Act itself this employer, like every other employer, had the privilege of rejecting the coverage.

The Act of 1937, repealing as it did the right of the farmer to elect to come under the Act could not apply to those who had already made the election. The Act of 1937, in effect, made the exemption again absolute for farm labor not under the Act but it said nothing about removing those covered by the Act from its bene-

fits. The Act of 1937, states in Sec. 302, "Provided however, that the provisions of this section shall not be so construed as to impair the obligation of any contract now in force . . ." The contracts between this employer and his employees were then in force and the repeal of the right to elect to come under this Act did not affect him because by virtue of the law of 1935 he was under the Act. He and his employees, therefore, were in exactly the same position as other employers and employees under the Act; his contract of hiring then and in the future included workmen's compensation unless rejection or termination was brought about by the action of the employer or the employee in the method set forth in the Act.

The appellant also contends that the injuries suffered were not incurred within the course of his employment. It is true that this claimant was not picking or grading potatoes at the time of the accident. His duties would not begin until the next morning but he was resting in a shanty and on a bed provided by his employer so that he would be near the job.

Whether the claimant was in the course of his employment is a question of law. Here, the compensation authorities have found in favor of the claimant so the evidence must be viewed in the light most favorable to the claimant, and he must be given the benefit of every inference reasonably deducible therefrom. *Kramer v. Philadelphia,* 179 Pa. Superior Ct. 129, 116 A. 2d 280 (1955).

The claimant belongs to a class of agricultural labor that has developed in the last twenty years. Migrating workmen or migrants as they are called, are now an important and necessary adjunct to modern agriculture's labor pool. As the word implies, they move habitually from one region or climate to another following the work of picking and harvesting potatoes, other

vegetables, fruit and grain, sometimes on a contract job basis, other times on an hourly or quantity basis. As they are migratory workmen they do not establish residences so that their housing, and in many cases their supply of food, is a part of their employment. This is an advantage to the employer because, in most cases, the work being done must be completed as soon as possible as the products dealt with are of a perishable nature. Providing housing, therefore, is an assurance that the workers are readily available at any time within a short distance from the work area. Here, the employment was on an hourly basis and his work record shows the number of hours and days of work were irregular so that, in effect, he was always on call. He had been called for work on the morning of January 20, which was the morning after the accident.

We have held that, " 'An employee may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place; yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof.' " *Conley v. Pittsburgh Coal Co.*, 157 Pa. Superior Ct. 567, 43 A. 2d 605 (1945).

Because of the nature of his employment, so that almost complete control of his time and actions was maintained by the employer, the claimant's situation is quite close to the hotel housekeeper who fell and injured herself while taking a shower. *Weiss v. Friedman's Hotel*, 176 Pa. Superior Ct. 98, 106 A. 2d 867 (1954), where we said at page 102, "The right to compensation is not to be defeated on the ground that an injury on the premises did not occur in the course of employment unless the alleged departure is for an activity wholly foreign to the employment, or constitutes an abandonment thereof." And analogous also to

*Combs v. Cole Bros. Circus, Inc.,* 165 Pa. Superior Ct. 346, 67 A. 2d 791 (1949), in which case it was found that although the claimant's actual work as "property" man for a circus was ended, as his employment required him to travel in the circus train, " 'such transportation was for the benefit of the employer' ", and where we said at page 348, "An employe need not necessarily be engaged in the actual performance of work at the moment of injury to be entitled to compensation. It is enough if he is occupying himself consistently with his contract of employment in some manner reasonably incidental to his employment." In the instant case the claimant was provided with and required to live in the shanty near the job, which was clearly for the benefit of the employer; his duties would begin in the morning, so that his being there was incidental to and consistent with his employment so that the accidental injuries were sustained in the course of his employment within the intendment of the Workmen's Compensation Law.

Judgment affirmed.

MONTGOMERY, J., concurs in the result.

---

DISSENTING OPINION BY WOODSIDE, J.:

The shabby treatment and horrible housing facilities so frequently afforded itinerant farm workers engenders sympathy for them. This, along with the equities which favor the claimant in this case, causes my heart to desire a result which my mind cannot reach. I should like to see the claimant recover, but to permit him to do so does such violence to established principles of law, particularly those relating to statutory construction, that I must dissent.

As stated in the majority opinion, agricultural employes were specifically excluded from workmen's

compensation prior to the Act of July 18, 1935, P. L. 1316, which permitted an employer of agricultural workers to, thereafter, elect to be subject to the workmen's compensation law by filing an application and having it approved by the board. This the defendant did.

By §506 of the Act of June 4, 1937, P. L. 1552, the provision permitting election was specifically repealed. Section 104 of that Act again specifically excluded agricultural services from the workmen's compensation law. The Law of 1937, therefore, completely separated the defendant and his employes from the workmen's compensation law. The Act of 1935, supra, was repealed. The Act of 1937 specifically said that the Workmen's Compensation Act did not apply to employers of agricultural workers. It not only repealed the right of agricultural employers to *elect* to be subject to the Workmen's Compensation Act, but it took from under the act those who had previously elected to be subject to it. The defendant here and his employes were not then subject to the workmen's compensation law. The contractual relationship, referred to in the majority opinion, was terminated; the statutory provision making it possible for the defendant and his employes to be subject to the Workmen's Compensation Act was repealed.

We are not dealing with the repeal and *reenactment* of a law. We are interpreting an act which was passed two years after a similar act had been specifically and entirely repealed. The Act of 1939 was not a "reenactment" of the Act of 1935 as that term is used technically. It was the enactment of a new law, albeit, like one which had previously been repealed. Thereafter, the legislature could not make an employer of agricultural personnel subject to the workmen's compensation law by merely reenacting the provisions

of the Act of 1935. The Act of 1939 did not attempt to breathe life into a void contract or a repealed statute. It operated prospectively, only. See Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556. It was necessary, therefore, for an employer to take some positive action *subsequent* to the effective date of the Act of 1939. This the defendant never did, and, therefore, he was not subject to the Workmen's Compensation Act at any time after 1937 when the Act of 1935 was repealed.

The question here is whether the employer is liable under the Workmen's Compensation Act. This is not a procedural matter, but a question of liability.

Whether we look to the law of contracts or the law of statutory construction, every rule or theory I know leads inevitably to the conclusion that the contract or statutory provision which made the employer subject to the Workmen's Compensation Act was nullified by the Act of 1937, and that the Act of 1939 could not give life to that which no longer existed.

I believe that the claimant here could sue in trespass at common law but that he has no claim under the Workmen's Compensation Act.