McIntyre, Appellant, *v.* E. J. Lavino & Co. et al., Appellants.

Argued January 19, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Aaron S. Swartz, Jr.,* of *High, Dettra & Swartz,* with him *Victor J. Roberts,* for appellants No. 85, and appellee No. 7.

*Maceo W. Hubbard,* with him *Raymond Pace Alexander* and *Frederick B. Smillie,* for appellee No. 85, and appellant No. 7.

OPINION BY MR. JUSTICE STERN, March 23, 1942:

These appeals require a construction of the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714.

David McIntyre entered the employ of defendant, E. J. Lavino & Co. in December, 1933. From 1935 on his duties consisted of operating a mill for drying manganese ore, an occupation which involved exposure to manganese dust, but in September, 1937, he was transferred to defendant's chrome department and thereafter had no contact with manganese. He was discharged on the fourth of February, 1938. On the twelfth of that month

he began to complain of pains in his shoulder, and on the twenty-fourth he became totally disabled and was found to be suffering from manganese poisoning. In July he filed a petition for compensation under the Occupational Disease Compensation Act of 1937. He died on April 27, 1939, and his widow, Elizabeth McIntyre, was substituted as claimant. An award was made to her by the referee which was affirmed by the Workmen's Compensation Board and the Court of Common Pleas. Defendant took an appeal to the Superior Court. Meanwhile the widow, in order to protect her common-law rights in case it should finally be decided that the Act of 1937 was not applicable, brought an action in trespass for negligence and for violation of defendant's statutory duty in regard to the installation of ventilating equipment; defendant filed an affidavit of defense to the statement of claim raising questions of law, which the court sustained. Plaintiff appealed to this court. The Superior Court thereupon certified to this court defendant's appeal in the compensation case, and thus both appeals, involving the same question, are now before us.

The point raised by defendant is that the Occupational Disease Compensation Act of 1937 does not cover the situation here presented because, by its terms, it did not go into effect until January 1, 1938, and the decedent's last exposure to the manganese dust was in September, 1937; therefore, defendant argues, it would be necessary to give a retroactive operation to the statute in order to bring this claim within it, and not only is it a familiar principle of law that legislation which affects substantive rights will not be construed to be retroactive unless so provided in the act *(West Arch Building & Loan Assn. v. Nichols,* 303 Pa. 434, 441, 154 A. 703, 704), but it is expressly stated in the Statutory Construction Act of May 28, 1937, P. L. 1019, section 56, that "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

Occupational diseases are, from a legal standpoint, peculiar in this—that they arise, not from an accident or

event happening at a precise moment, but from a day by day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself. In the case of accidents compensable under the Workmen's Compensation Act the accident and the damage resulting therefrom, the cause and the effect, are usually determinable immediately and they are practically simultaneous. But, because in disability arising from an occupational disease both cause and effect are protracted and a long interval is apt to elapse between the exposure and the disability, it becomes necessary to fix a point of time at which the injury which is the subject of compensation shall be deemed to arise and the right to compensation accrue. Accordingly the Occupational Disease Compensation Act of 1937 provides, section 3, that "The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident." Thus it makes the occurrence of the disability the event which constitutes the compensable injury, although the disability is necessarily preceded by an exposure and an occupational disease of which it is the culmination.* Since the date when McIntyre's disability occurred was February 24, 1938, this was the time when a compensable injury occurred, and, it being subsequent to the effective date of

---

* In the case of trespass actions for disease or injury from exposure due to the employer's negligence or violation of a statutory duty it is the breach of the employer's duty which constitutes the cause of action and the disease is but the consequential damage: *Plazak v. Allegheny Steel Co.*, 324 Pa. 422, 188 A. 130. In the case of a claim under the Workmen's Compensation Act it is the accident which constitutes the cause of action, even though the right to compensation may accrue later: *Polk v. Western Bedding Co.*, 145 Pa. Superior Ct. 142, 20 A. 2d 845. But in the case of a claim under the Occupational Disease Compensation Act it is the disability resulting from the disease, which, in turn, is due to the exposure, that is declared to constitute the compensable injury.

the act, no retroactive construction of the statute is involved. That it was the clear and manifest intention of the legislature that the act should apply to cases of disability arising after January 1, 1938, even though resulting from exposure to occupational disease hazards which had terminated prior to that time, is indicated, not only by the express provision of section 3 referred to, but by necessary inference from sections 6 (b) and 7 (a). Section 6 (b) establishes liability of the employer when the disability of the employe results within two years after the last exposure in the hazardous employment; therefore a disability is compensable, under sections 3 and 6 (b), if it occurs after the effective date of the act and within two years of the last exposure, irrespective of whether the exposure itself occurred before or after that date. Section 7 (a) provides that, in the case of such occupational diseases as develop to the point of disablement only after an exposure of five or more years, the compensation for disability occurring during the first year in which the act became effective should be payable by the employer and the Commonwealth in certain stated proportions, thus indicating that the legislature contemplated the payment of compensation for disabilities occurring during the first year of the operation of the act even in cases where the exposure causing the disability must have occurred during a period of at least five preceding years.

In *Moffett v. Harbison-Walker Refractories Co.,* 339 Pa. 112, 14 A. 2d 111, the plaintiff, complaining of partial disablement by silicosis, and bringing an action in tort for violation of the Factory Act of May 2, 1905, P. L. 352, and for common-law negligence, argued that, although his disability occurred on March 8, 1938, he should be allowed to pursue his remedy in trespass for so much of the injury as was negligently inflicted before the effective date, January 1, 1938, of the Act of 1937. This court rejected that contention and held that, since his disability occurred after the effective date of the act, his remedy

was confined exclusively to the act and his common-law rights were entirely abrogated. And in *Rando v. State Workmen's Insurance Fund,* 145 Pa. Superior Ct. 386, 21 A. 2d 530, the Act of 1937 was applied to a case where the claimant's disability occurred during 1938—the first year in which the act became effective—although the occupational disease was one that could have developed to the point of disablement only after an exposure of five or more years.

Even if the construction thus placed upon the Act of 1937 were to be regarded as giving it a retroactive operation, such interpretation would not make it unconstitutional. The act was a supplement to the Workmen's Compensation Act and therefore part of a system of compensation not imposed by law but established by agreement of the parties implied from their failure to express an intention to the contrary. In *Anderson v. Carnegie Steel Co.,* 255 Pa. 33, 39, 99 A. 215, 217, it was held, for this reason, that the Workmen's Compensation Act did not deprive employer or employe of the constitutional right of trial by jury, but merely permitted a waiver of that right, and such waiver was not precluded by either the federal or the state constitution; neither did the act violate the provision of the state constitution that the amount to be recovered for injuries to persons or property should not be limited by statute, because the schedule of payments prescribed by the act became operative only when the parties to the contract of employment so agreed. When employer and employe accept compensation legislation their relation in regard to it becomes contractual and their rights are to be determined under its provisions: *Liberato v. Royer & Herr,* 81 Pa. Superior Ct. 403, 407, 408, affirmed 281 Pa. 227, 126 A. 257. Since, therefore, McIntyre was in the employ of defendant on the effective date of the Occupational Disease Compensation Act, and the parties did not, then or thereafter, express their intention not to be bound by it, they voluntarily submitted themselves to its terms, including the

provision of section 3, so that defendant assumed thereby the duty of paying compensation to McIntyre if disability from occupational disease should subsequently reveal itself. Had McIntyre's employment ceased before January 1, 1938, a different question would be presented. It is true that in *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 7 A. 2d 302, some provisions of the compensation acts were declared unconstitutional on the ground either that they sought to cover injuries not arising in the course of employment or that they provided for unreasonable compensation, thus violating the express provisions of Article III, section 21, of the Constitution of the Commonwealth. Here, no such violations occur. While the disability which constituted the compensable injury did not happen during the course of the employment, which had terminated twenty days before, the occupational disease of which it was the culmination did arise in the course of the employment, and this is all that is required by Article III, section 21, the pertinent language of which is: "The General Assembly may enact laws requiring the payment by employers . . . of reasonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes, . . . regardless of fault of employer or employe, . . ." Surely it was not intended that, if an occupational disease arising in the course of the employment culminated in a disability which manifested itself after the employment had ceased, the disability could not be the subject of compensation, for otherwise, after an employe had been exposed to the hazard for years and the seeds of occupational disease had been sown in his body, his employer could discharge him and thus avoid compensation liability for a resulting disability which might reveal itself shortly, or even immediately, thereafter.

Both judgments are affirmed.