## Szoke v. Johnstown Coal & Coke Co. et al.

*George Jerko*, for claimant.
*Harry B. Hogemyer*, for defendant.
*Gerald K. Gibson*, for Commonwealth.

GRIFFITH, J., August 15, 1955.—This appeal from the Workmen's Compensation Board was heard during the lifetime of Hon. John H. McCann, now deceased, and counsel for the parties requested that decision be withheld pending the outcome of an appeal from the decision of a lower court to the Superior Court of Pennsylvania in which a similar question was involved. However, since more than a year has elapsed and argument in that case has been deferred by request of the parties it is felt that this appeal should be disposed of.

There is no dispute but that claimant is entitled to compensation under the Pennsylvania Occupational

Disease Act of 1939, as amended, by reason of anthracosilicosis. The referee awarded compensation at the rate of $30 a week to a maximum limit of $6,500. This award was reduced by the Workmen's Compensation Board to $25 per week and a maximum limit of $5,000. Claimant appealed.

On November 15, 1950, claimant's last exposure in an occupation having a silica hazard occurred. On the same date his contract of employment with defendant ceased. On this date the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended by the Act of May 14, 1949, P. L. 1379, sec. 2, was in effect. It provided compensation at the rate and in the amount allowed by the board. On January 2, 1952, the Act of January 2, 1952, P. L. (1951-1952) 1811, sec. 1, 77 PS §1406, became effective and increased compensation to the amount awarded by the referee. On July 2, 1952, claimant became totally disabled as a result of anthracosilicosis.

Claimant contends that the date upon which total disability occurs determines the rate of compensation and the maximum amount. With this contention we cannot agree.

It is true that in Pekorofsky v. Glen Alden Coal Company, 171 Pa. Superior Ct. 97, 103-104, the court said:

"The *liability* of an employer to pay compensation *is fixed as of the date of last exposure*, while the *duty* to make such payments *and* the *amount* thereof becomes fixed *upon the date when disability occurs*." (Italics supplied.)

In that case there was no dispute as to the amount payable to claimant. The contest was between the employer and the Commonwealth as to how this amount should be apportioned between them. A reading of the opinion indicates clearly that the word "amount" was obviously used by the court as mean-

ing the "amount" of compensation to be paid by the State on the one hand and by the employer on the other. That is, the word "amount" was used in the sense of "proportion" and not to indicate that the total amount of compensation to be paid to claimant should be fixed on the date when disability occurs. The proportion of compensation payable by the State and by the employer is specifically made to depend upon the date when total disability occurs by section 308(a) of the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566 as amended, 77 PS §1408, because the statute says: "If disability begins . . ." between various dates, various proportions of the compensation due claimant shall be paid by the employer and by the Commonwealth respectively. Thus the date of total disability, by the language of the statute, determines the percentage payable by the Commonwealth and by the employer. However, we are satisfied that it is the date of last exposure to a silica hazard which determines the rate of compensation and the total amount payable to claimant.

In the workmen's compensation case of Polk v. Western Bedding Company et al., 145 Pa. Superior Ct. 142, the court held that the schedule of compensation in force at the time of the accident and not that in effect at the time of death controls because the schedule was a part of the statute which formed part of the contract of employment between decedent and his employer. In that case an employe was injured in an accident sustained in the course of his employment at a time when the compensation rates were governed by the Act of April 26, 1929, P. L. 829. The employe died as a result of such injuries after the effective date of the Act of June 4, 1937, P. L. 1552, 77 PS §1, and it was held that his widow's right to compensation was to be computed according to the schedule contained in the Act of 1929 and not in accordance

with the schedule provided for under the Act of 1937. In this case the court said, page 146: "When deceased sustained accidental injuries in the course of his employment, the act then in force and a part of the contract of employment governed the injured employe's right to be paid compensation and the extent thereof."

And again at page 147: "The cause of action in the present case is the accident which resulted in an injury to deceased in the course of his employment, and it follows that the law existing at that time is determinative of the rights and obligations of the present parties arising therefrom. . . . Manifestly his death was not itself the cause of action, but merely gave her the right to receive compensation through him under his contract of employment."

In the present case it is likewise clear that the cause of action is not alone the disability of claimant but rather his exposure to a silica hazard during his employment by defendant company.

Let us suppose that on January 2, 1952, the rate and amount of compensation had been decreased instead of being increased. What would have been claimant's position? He had entered into a contract of employment with defendant company in 1924 which continued until the mine closed on November 15, 1950. During the period of his employment, the Occupational Disease Compensation Act of 1937 was enacted and it was later supplanted by The Pennsylvania Occupational Disease Act of 1939, 77 PS §1201, et seq. These acts not having been rejected were incorporated by law into the employment contract: section 301(a) of The Pennsylvania Occupational Disease Act of 1939 as amended, 77 PS §1401. The employer and claimant each knew what their respective liabilities and rights were. When the employment contract ceased on November 15, 1950, the rights of the parties became fixed and claimant knew that if he subsequently became

totally disabled from anthracosilicosis due to his exposure during employment he would be entitled to a specified and certain compensation. If the legislature later reduced the benefits for such cases, he would be unaffected because, his employment contract having terminated, his contractual status was fixed and certain. Both exposure to a silica hazard in the course of employment and resulting total disability are necessary to impose liability on an employer. It is only by attributing the disability to the exposure during employment that both requirements for fixing responsibility on the employer can be met. So the act in force during the time of employment governs the right to compensation and the amount.

In Anderson v. Sunray Electric, Inc., 173 Pa. Superior Ct. 566, claimant was exposed to a beryllium hazard while employed by defendant company. When she left the employ of defendant beryllium poisoning was not an occupational disease within the definitions of The Pennsylvania Occupational Disease Act. Subsequently the act was amended to include beryllium poisoning and later claimant became disabled. The court refused to award compensation on the ground that claimant's rights were contractual in nature and since she was not employed in an occupation having a beryllium hazard at a time when the amendment made such disease compensable, she was not covered by The Pennsylvania Occupational Disease Act. In this case the court said, pages 568 to 569:

"When an employer and employe accept the occupational disease legislation, their relation, like that created by the workmen's compensation statutes, becomes contractual and their rights are to be determined under the applicable provisions of the existing law, which become part of the terms of employment. . . . But unless the claimant is employed by the employer at the time when the act or the amendment

becomes effective the provisions thereof do not become a part of the terms of employment, and legislation enacted after the employment has ceased will not support a recovery of compensation. McIntyre v. Lavino & Co., 344 Pa. 163, 25 A. 2d 163. To rule otherwise would unconstitutionally impair the vested rights of both the employer and employe in the contract of employment made while the Act of 1939 and the amendment of 1945 were in force."

This holding is not in conflict with the rule that the proportion of compensation to be paid by the employer and by the Commonwealth can be changed by the legislature from time to time because the Commonwealth's obligation to pay part of the compensation is an assumed gratuity in relief of an employer who is primarily liable, and the State's contributions are in the exercise of its police power and not pursuant to any contract between the State and the employer: Agostin v. Pittsburgh Steel Foundry Corp., et al. 354 Pa. 543; Heinrich v. Commonwealth, 166 Pa. Superior Ct. 97; Pekorofsky v. Glen Alden Coal Company, 171 Pa. Superior Ct. 97.

Nor does this determination conflict with the legislative right to modify, after the cessation of claimant's employment, procedural matters including a different limitation for the filing of claims: Agostin v. Pittsburgh Steel Foundry Corp., et al., supra. In that case the court said, page 549:

"Even though the Act of 1937 (the Act in force when employment terminated) was repealed, *its compensatory terms*, which had been and, at all relevant times, *necessarily remained an integral part of the claimant's contract* with the defendant, continued none the less to be evidential of the claimant's contractual right to compensation for the disability and the defendant's liability therefor." (Italics supplied.)

We, therefore, enter the following

## Decree

And now, August 15, 1955, upon due consideration, claimant's appeal is dismissed, the award of the Workmen's Compensation Board is affirmed and the prothonotary is directed to enter judgment in favor of claimant as follows:

Compensation to be paid claimant, Frank Szoke, at the rate of $25 per week beginning July 9, 1952, and continuing within the limitations of the act in force at date of last exposure. Johnstown Coal & Coke Company, defendant, is directed to pay 60 percent of the above stipulated payments of compensation or at the rate of $15 per week, and 40 percent is to be paid by the Commonwealth of Pennsylvania, Department of Labor and Industry, out of the Occupational Disease Fund at the rate of $10 per week. Total liability of above parties not to exceed the sum of $5,000. Interest is awarded in accordance with the provisions of section 410 of The Pennsylvania Occupational Disease Act.

## Exception

To all of which counsel for claimant excepts and prays that an exception be noted and bill sealed; all of which is, the day and year aforesaid, accordingly done.