613 A.2d 643

**B.P. OIL CORPORATION, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (MAHER), Respondent.**

**Joseph F. MAHER, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (B.P. OIL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided Aug. 5, 1992.

Charles S. Katz, Jr., for petitioner/respondent, B.P. Oil Corp.

Robert W. Maher, for respondent/petitioner, Joseph F. Maher.

Before COLINS, and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

B.P. Oil Corporation appeals from a Workmen's Compensation Appeal Board order that modified a referee's award of benefits, under Section 301(c)(2) of the Pennsylvania Workmen's Compensation Act (Act),[1] to Joseph F. Maher, claimant. Maher cross-appeals, contesting the effective date of disability.[2]

This case has been before the Court previously.[3] The relevant facts found by the referee that are not in dispute are that the claimant worked as an insulator at the Marcus Hook Refinery from 1940 to September 30, 1978, when he retired, and, in the course of his employment, he was exposed to asbestos hazard. By 1970, only non-asbestos materials were used when new insulation was installed; however, old asbestos-containing materials still had to be removed as part of the normal duties of insulators. By February 1973, the employer had implemented safety measures to protect the workers from asbestos, namely, requiring the wearing of masks and coveralls when working with asbestos.

In late 1972, the plant physician initiated a program of examining each asbestos handler to see if he were suffering any ill effects from exposure to asbestos. Pursuant to this program, a board certified pulmonary specialist engaged by the employer first examined the claimant on January 3, 1973, and diagnosed severe extensive pleural disease due to asbestos

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(2).

2. Our scope of review of a decision of the Workmen's Compensation Appeal Board is limited to determining whether constitutional rights were violated, an error of law was committed or necessary findings of fact were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S.A. § 704; *Universal Trucking, Inc. v. Workmen's Compensation Appeal Board (Hassell),* 112 Pa.Commonwealth Ct. 428, 535 A.2d 722 (1988).

3. *Maher v. Workmen's Compensation Appeal Board (B.P. Oil Corporation,* 125 Pa.Commonwealth Ct. 411, 558 A.2d 138 (1989). We have substantially borrowed our statement of the facts from this Court's previous opinion.

exposure. The specialist recommended that the claimant continue working because he was not disabled. On or about March 6, 1973, the employer gave the claimant an order not to participate in the removal of old insulation and to avoid all contact with asbestos dust; the claimant was told to police his own assignments and call any incorrect assignment to the attention of his supervisor.

The specialist continued to monitor the claimant's condition every six months from May 2, 1973 through May 9, 1978. On September 17, 1981, the specialist examined the claimant for the last time, and at that point he first diagnosed asbestosis. There had been an increase in the claimant's disability between May 1978 and September 1981. At that time, the specialist thought that the claimant was disabled from returning to his work as an insulator, although he did not think the claimant was disabled from sedentary work.

In a decision dated August 18, 1984, the referee dismissed Maher's claim petition, concluding that the last exposure to asbestos which caused Maher's disability was before January 3, 1973; therefore, he was not entitled to benefits. Maher appealed to the board which affirmed the referee's decision. Maher then appealed to this Court, which issued an *en banc* decision that reversed the board's decision and held that proof of exposure to asbestosis after June 30, 1973 was sufficient to establish his entitlement to benefits. The case was remanded to the board with instructions to remand to the referee for a determination on the date of disability and computation of benefits.

On remand, the referee found Maher's date of disability was September 17, 1981. The referee awarded benefits based upon rates in effect in 1973, because he concluded that the last day of exposure from which Maher's disability resulted was the last working day prior to January 3, 1973. Both parties appealed the referee's decision to the board, which modified the award of benefits to Maher to the maximum allowable rate in 1978, upon its conclusion that the date of Maher's last exposure was his last day of work. It ordered that benefits become effective on September 17, 1981.

Initially, we will address Maher's appeal, in which he argues that his benefits should commence on October 1, 1978, the date he retired. This question is easily decided, for Maher's brief in essence asks us to reexamine the referee's findings of fact. This is not our function. *See Universal Trucking, Inc. v. Workmen's Compensation Appeal Board (Hassell),* 112 Pa.Commonwealth Ct. 428, 535 A.2d 722 (1988). The referee found—and the board affirmed—that Maher did not become disabled until September 17, 1981. This conclusion was supported by the medical testimony of Jerome Rudnitzky, M.D., a board certified specialist in pulmonary medicine, who testified for the employer.[4] Indeed, Maher offered no contrary medical evidence that he was physically disabled due to asbestos on October 1, 1978.[5]

In support of his argument, Maher cites *Harbison–Walker v. Workmen's Compensation Appeal Board, (Varner),* 40 Pa.Commonwealth Ct. 556, 397 A.2d 1284 (1979), in which this Court stated:

Since it was undisputed that claimant was receiving wages from Harbison and hence suffered no loss of earning power until February 1, 1976, the referee was justified in finding that claimant was not partially or totally disabled until February 1, 1976. Therefore, he correctly determined claimant's compensation rate according to the 1976 compensation schedule. See 2 A. Barbieri, Pennsylvania Workmen's Compensation and Occupational Disease No. § 7.02(1) (1975).

*Id.* at 559, 397 A.2d at 1285, 1286.

 For a compensable disability, a claimant must be both physically disabled and suffer a loss of earning power. In *Harbison–Walker,* claimant was found to be physically disabled in 1975 but did not become disabled under the act, i.e., did not suffer a loss of earning power, until 1976. Maher

---

4. Notes of Testimony, 9/21/83, pp. 1–18.

5. Maher did testify that he retired because his occupational disease rendered him unable to do his job. However, it is the referee's job as the fact finder to make such finding based on the evidence, not the job of this Court.

on the other hand, was not found physically disabled due to asbestos until 1981, but had retired in 1978, which caused him to suffer a loss of earning power. Therefore, the date Maher's physical disablement and loss of earning power coincided was September 17, 1981, the date used by the board. Accordingly, we will affirm the board's award of benefits.

We turn now to the issues raised by B.P.[6] At the outset, B.P. argues that the referee's conclusion that Maher's claim petition should be dismissed was the correct result. It is B.P.'s contention that since Maher voluntarily retired, B.P. had no legal burden of proving that work was available to Maher. B.P. relies on *Dugan v. Workmen's Compensation Board of Review (Fuller Company of Catasauqua)*, 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990), in which this Court held that, when a claimant suffered a myocardial infarction and subsequently testified he voluntarily retired claimant's loss of earning power was caused by his voluntary retirement, not the injury, and the employer was relieved of his duty to prove the availability of other employment.

The facts in *Dugan*, a myocardial infarction injury claim, are not applicable to this occupational disease claim, as was made clear when this Court distinguished *Dugan* from *Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (Charles T. Smith)*, 70 Pa.Commonwealth Ct. 100, 452 A.2d 611 (1982). In *Dugan*, 131 Pa.Commonwealth Ct. at 223, 569 A.2d at 1041, we stated:

> [t]he injury [in Dugan] which caused Claimant's disability was a myocardial infarction, which is not an occupational disease. The occupational disease provision of the Act which underlies the holding in Wheeling is inapplicable to the case at bar. There is no similar statutory period for the discovery of a non-disease injury. Because non-disease injuries are immediately apparent, as was Claimant's injury

6. B.P. also raises the issue of whether the Commonwealth Court's prior decision on Maher's eligibility for benefits was in error. B.P. Oil is attempting to relitigate its case. This Court has already decided this issue and we will not address it in this opinion.

in the present case, a waiting period for such injuries to be discovered is unnecessary.

In *Wheeling*, the employer advanced an argument similar to the one B.P. is now asserting:

> that any loss of earning power suffered by Claimant is due to his voluntary retirement and not his medical condition. It asserts that where a claimant voluntarily removes himself from the labor market, that is, when the work-related disability does not precipitate the decision to leave employment, there is no loss of earning power cognizable under the Act.

*Wheeling* at 103, 452 A.2d at 613.

This Court rejected the employer's argument and held that a "claimant is entitled to disability compensation, notwithstanding his voluntary retirement." *Id.* at 106, 452 A.2d at 614. This Court further stated that:

> [t]his conclusion is entirely consistent with the purpose of the occupational disease provisions of the Workmen's Compensation Act. With regard to occupational disease, our Supreme Court has noted: "[T]he exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself." *McIntyre v. E.J. Lavino Co.*, 344 Pa. 163, 25 A.2d 163, 164 (1942). See also *Montgomery v. Workmen's Compensation Appeal Board*, 42 Pa.Commonwealth Ct. 143, 400 A.2d 253 (1979). We agree that it is precisely because such diseases frequently do not manifest themselves until after the employee has, for whatever reason, left the employment that our Legislature has allowed 300 weeks since the last exposure for the disease to be manifest. *Id.*

■ As this case concerns an occupational disease claim, we hold that Maher's voluntary retirement from B.P. did not preclude him from an award of benefits. Therefore, B.P.'s argument that the referee's conclusion was correct is rejected.

The next issue raised by B.P. is whether the board erred when it ordered payment of compensation at the rate in effect

when Maher retired in 1978, rather than the rate in effect in 1973, the year the referee found that Maher's exposure to asbestos was the cause of his disability. B.P. Oil adopts as its argument the referee's conclusion of law No. 7, which stated:

claimant's rate of compensation may be properly based only upon the rate in effect as of the date of his last exposure which contributed in whole or in part to that disability. Although claimant was last exposed to asbestos in 1978, exposure in that year did note [sic] contributed [sic] to his disability. Since the referee has found that the last exposure which caused claimant's disability occurred prior to January 3, 1973, the referee concludes that the last date of exposure from which claimant's disability resulted in whole or in part was the last working day prior to January 3, 1973, specifically Wednesday, January 2, 1973.[7]

The board agreed that the date of the last exposure to the hazard is the date used to determine the rate of compensation; however, it concluded the date the referee used was incorrect, because Maher's last day of exposure to asbestos, as found by the referee, was in 1978.

We agree with the board's conclusion that "the referee's use of 1973 to determine the compensation rate is contrary to the rationale of the previous Commonwealth Court decision in this case." The referee is reverting to the same rationale he used in his first decision, that an occupational disease has a definitive date, i.e., a "hit" as to when the injury occurs. This Court, in our previous decision, rejected the "hit" theory and stated:

The above analysis reveals the fallacy in the referee's finding as a fact that the claimant's disease was caused by exposure before June 30, 1973. The corollary to the proposition that medical science cannot establish with certainty that a disease resulting from ongoing exposure was caused in whole or in part by exposure after a particular date is that medical science cannot establish with certainty that the disease was *not* caused in whole or in part by such exposure. Where such medical uncertainty is recognized as a matter of

7. Referee's decision, 12/26/89.

law, the referee is not free to make a factual finding completely contrary to that principle of uncertainty. The referee's making such a finding here, and the board's affirming on the basis that that finding could not be disturbed, amounts to treating a true question of law as a question of fact. (emphasis in original).

*Maher*, 125 Pa.Commonwealth Ct. at 421, 422, 558 A.2d at 143.

■ Thus, in this case, involving this same individual and the same referee's finding, we rejected as a matter of law the finding that Maher's exposure to asbestos prior to January 3, 1973 was the sole cause of his disability.

This Court stated in *Marcucci v. Workmen's Compensation Appeal Board (B.P. Oil Company)*, 98 Pa.Commonwealth Ct. 7, 16, 510 A.2d 1262, 1266 (1986) that a "a specific 'hit', or fixed injury, has no place in the occupational disease process, but is tantamount to requiring proofs which were necessary under the pre–1972 era when an accidental injury was required."

Since we have rejected the referee's finding, we now turn to an examination of the validity of the board's order awarding benefits based on 1978 rates. That date was both the last day that Maher worked and the last day he was exposed to asbestos hazard. We conclude the board's award of benefits based on 1978 rates was correct, but for the wrong reason.

The specific provision that determines the date of last exposure as the date for setting a claimant's weekly compensation rate is found in section 309 of the Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. § 1409. The pertinent paragraph states: "[t]he weekly wage upon which compensation shall be computed, shall be the wage earned by the employe in his last employment in the occupation or industry in which the occupational disease is a hazard."

This case was filed under section 301(c)(2) of the Workmen's Compensation Act. The date of last exposure to a hazard is not one of the criteria delineated by the legislature as a basis for computing compensation under said section. Such language, relied upon by the referee and board, is found only in section 309 of the Occupational Disease Act, not in any section

of the Workmen's Compensation Act. The referee and board erred in basing Maher's weekly compensation rate on the date of his last exposure to asbestos.

However, since the board affirmed the referee's decision that "[c]laimant's average weekly wage was at all times sufficient to entitle him to maximum total disability benefits," [8] and neither party challenges this finding, and since Maher's date of last exposure coincides with his last day worked, we find the award of benefits based on rates in effect in 1978 was proper.

Accordingly, the board's order is affirmed.

## ORDER

AND NOW, this the 5th day of August, 1992, the Workmen's Compensation Appeal Board order at A90–134, dated April 30, 1991, is hereby affirmed.

---

8. Referee's Findings of Fact, 12/26/89, No. 2.