696 A.2d 1149

Robert BIBLE, Joseph Swager, James Richter, Roy Tiernan, Homer Kifer, Richard Ansell, John W. Lovelace, Floyd Hershberger, Edwin Lubinski, and Casper Hracho, individually and on behalf of all members of the class of claimants who are similarly situated, Appellees,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY and Johnny Butler, Acting Secretary of the Department of Labor and Industry, USX Corporation, Dial Corporation, Teledyne Vasco, Shenango, Inc., and Lukens Steel Co.

Appeals of COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY and Johnny J. Butler [No. 65]; USX Corporation [No. 69]; Dial Corporation [No. 71]; and Lukens Steel Company [No. 73].

Supreme Court of Pennsylvania.

Argued March 5, 1996.

Decided June 13, 1997.

248

Daniel J. Doyle, Harrisburg, for L&I, et al.

William R. Caroselli, Daniel K. Bricmont, Pittsburgh, Joseph L. Della Guardia, for Bible et al.

Susan McLaughlin, Ernest J. Bernabei, Philadelphia, for Dial Corporation in Nos. 65 M.D. Appeal Docket 1995 and 69 M.D. Appeal Docket 1995.

Clifford A. Goldstein, Philadelphia, for Lukens Steel.

J. Lawson Johnston, Pittsburgh, for Teledyne Vacso.

Phyllis Procopio, Pittsburgh, for Shenango, Inc. in Nos. 65 M.D. Appeal Docket 1995, 71 M.D. Appeal Docket 1995 and 73 M.D. Appeal Docket 1995.

W. Thomas McGough, William McKim, Pittsburgh, for USX Corporation.

George H. Thompson, Pittsburgh, for Shenango, Inc. in No. 69 M.D. Appeal Docket 1995.

Susan McLaughlin, Philadelphia, for Dial Corporation in Nos. 71 M.D. Appeal Docket 1995 and 73 M.D. Appeal Docket 1995.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

The Appellees commenced this action in Commonwealth Court by filing a petition for review in the nature of a complaint in equity and for declaratory judgment. They asserted that Act 1 of 1995 was unconstitutional insofar as it retroactively amended the Workers' Compensation Act provisions regarding compensation for loss of hearing. The court granted summary judgment in their favor. We now reverse.

Prior to Act 1 of 1995, the Workers' Compensation Act provided in the "Schedule of compensation for disability from permanent injuries of certain classes,"

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

(8) For the complete loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during two hundred sixty weeks; for complete loss of hearing in one ear, sixty-six and two-thirds per centum of wages during sixty weeks.

Act of June 2, 1915, P.L. 736, art. III, § 306(c)(8), as amended, 77 P.S. § 513(8). In *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975), we rejected a literal and absolute interpretation of the term "complete" and held that a claimant seeking compensation under this provision need only establish that his loss of hearing was complete "for all practical intents and purposes."

Following *Hartlieb*, compensation claims for specific loss of hearing turned largely on determination of a claimant's ability to function in his usual social, work, and family settings, as described in his testimony and his accounts to his physician. The relatively subjective nature of such evidence produced results that were seemingly inequitable when objective factors were compared.

For example, in *Iervolino v. Workmen's Compensation Appeal Board*, 120 Pa.Cmwlth. 193, 548 A.2d 384 (1988), the claimant's physician testified that the claimant had a 55% hearing loss in one ear and a 60% loss in the other. However, he also testified that although the claimant would not be able to hear a whisper or soft sounds, " 'he would get along well and is not incapacitated too much.' " *Id.* On the basis of this testimony, the referee concluded that the hearing loss was not a complete loss for all practical intents and purposes, and denied benefits. The Board and Commonwealth Court affirmed.

In contrast, the claimant in *Babcock & Wilcox v. Workmen's Compensation Appeal Board*, 105 Pa.Cmwlth. 539, 524 A.2d 1080 (1987), showed only a 16.6% hearing impairment, but the referee awarded compensation for complete loss of hearing and the Board and Commonwealth Court affirmed. The

referee's conclusion was based on a physician's testimony, which in turn was based on the subjective difficulties expressed by the claimant that he could not hear or understand conversation on the telephone or in social or public gatherings.

In *LTV Steel Co. v. Workmen's Compensation Appeal Board (Verez)*, 153 Pa.Cmwlth.470, 621 A.2d 1146, 1148 (1993), Commonwealth Court made note of these difficulties, observing that

> A claimant with a relatively small loss, but with a sympathetic referee, may be awarded compensation while a claimant with a greater loss, as measured objectively, may be denied.

In *Pettola v. Workmen's Compensation Appeal Board (Sharon Steel Corp.)*, 168 Pa.Cmwlth. 426, 650 A.2d 1172 (1994), and *Kuzniar v. Workmen's Compensation Appeal Board (Sharon Steel Corp.)*, 168 Pa.Cmwlth.508, 650 A.2d 1212 (1994), the court went so far as to suggest that the legislature reexamine the provisions dealing with occupational hearing loss.

Section 2 of Act 1 of 1995 rewrote the paragraph of the specific loss schedule that dealt with loss of hearing. Before the amendment, hearing loss was compensable only if it was "complete." After the amendment, partial hearing loss is also compensable as a specific loss. The amount of compensation remains 66⅔ per cent of wages, but the duration of the payments is calculated as a factor of 260 weeks in the case of loss caused by long-term exposure to occupational noise or loss in both ears due to other causes such as acoustic trauma or head injury, or as a factor of 60 weeks in the case of loss in one ear due to causes such as acoustic trauma or head injury. The duration of compensation is determined by multiplying the maximum number of weeks by the percentage of hearing impairment as demonstrated by audiogram testing using the American Medical Association's Guides to the Evaluation of Permanent Impairment. Thus a claimant whose audiogram test showed a 30% impairment in both ears would receive two-thirds of his wage for 78 weeks (30% of 260 weeks); a claimant showing a 30% impairment in one ear would receive two-thirds of his wage for 18 weeks (30% of 60 weeks) if the loss was

caused by a sudden loud noise, a blow to the head, or some occupational source other than long-term exposure.

The legislature specified in Section 3(2) of Act 1 of 1995 that these changes "shall apply retroactively to all claims existing as of the effective date of this act for which compensation has not been paid or awarded." In bringing this action, the appellees alleged that each of the named plaintiffs had been subjected to occupational noise and had filed a claim asserting a complete loss of hearing for all practical intents and purposes that was pending when Act 1 of 1995 became effective. They argued that application of the Act to them would constitute an impairment of the obligation of contracts in violation of Article I, Section 17 of the Pennsylvania Constitution and Article I, Section 10 of the United States Constitution. They argued in the alternative that such application of the Act violates their due process rights under Article I, Section 9 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution.

 Commonwealth Court began its analysis by quoting *In Re 1983 Audit Report of Beharry*, 116 Pa.Cmwlth. 613, 544 A.2d 514, 517–18 (1988) as follows:

> It is, of course, well settled that there is a presumption against a statute having retroactive effect and that such construction will not be embraced unless it is clearly and manifestly intended by the legislature. See Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926.

The presumption against retroactive effect has no application here for two reasons. First, the statute contains a specific legislative direction that it is to be retroactive. Second, the rule is one of statutory construction not constitutional interpretation. The proper starting point is the presumption that the legislature does not intend to violate the Constitution, and the corollary that a party asserting the unconstitutionality of a legislative act bears a heavy burden of proof. *Bethenergy Mines v. Workmen's Compensation Appeal Board*, 524 Pa. 235, 239, 570 A.2d 84, 86. Although the quote from *Beharry* implicitly recognizes that the legislature may constitutionally

direct that laws be retroactively applied, it is apparent that the Commonwealth Court in this case gave little effect to the proper presumption and assignment of burdens.

█ Commonwealth Court ruled that because the claims arose and were filed before the effective date of Act 1, Section 306(c)(8) as it existed before that date was part of the claimants' employment contract under which they had a vested right to have their claims adjudicated. The court cited *Agostin v. Pittsburgh Steel Foundry Corp.*, 354 Pa. 543, 47 A.2d 680 (1946).

*Agostin* involved a worker who was exposed to silicotic hazard for more than eight years and was unable to continue working as of January 20, 1938, because of partial disability due to silicosis. Under the Occupational Disease Compensation Act of July 2, 1937, partial disability was not compensable. After Agostin's disability became total (on November 7, 1939), he filed a claim, on September 17, 1940. Although a substantial portion of our opinion was devoted to the question whether the applicable limitations period was the two year period of the 1937 Act or the one year period of the 1939 Act, which had repealed the 1937 Act, resolution of that question was not necessary to the decision of the case.

The employer argued that the claim was untimely, asserting that the two year limitations period for filing the claim under the 1937 Act began to run on January 20, 1938, Agostin's last day of work, and expired on January 20, 1940. We rejected this argument based on the language of the Act, stating that "[t]he time ... when total disability occurred was the date which began the running of the statute...." 354 Pa. at 551, 47 A.2d at 684. We agreed with the employer that Agostin's substantive right to compensation arose under the 1937 Act, but indicated that the 1939 Act provided the procedure for its enforcement. Accordingly, the one year period of the 1939 Act began to run on November 7, 1939, and had not expired when the claim was filed on September 17, 1940. However, given our interpretation of when the limitations period began to run, Agostin's claim would have been timely regardless of whether it was the 1939 Act or the 1937 Act that applied.

As noted, the employer agreed that Agostin's substantive right to compensation arose under the 1937 Act. It was our language explaining this uncontroverted proposition that the Commonwealth Court cited in support of its holding in this case:

> Even though the Act of 1937 was repealed, its compensatory terms, which had been and, at all relevant times, necessarily remained *an integral part of the claimant's contract with the defendant,* continued none the less to be evidential of *the claimant's contractual right to compensation* for the disability and the defendant's liability therefor.

> What the Act of 1939 did at once effectually accomplish, without interfering with vested rights, was to repeal the procedure prescribed by the Act of 1937 for the enforcement of compensation claims and supply, *inter alia,* a different limitation for the filing of claims. That, the legislature could constitutionally do. No one has a vested right in a statute of limitations or other procedural matters. The legislature may at any time alter, amend or repeal such provisions without offending constitutional restraints. So long as there is no omission of a remedy for the enforcement of a right for which a remedy existed when the right accrued, a want of due process is in no way involved.

354 Pa. at 548–49, 47 A.2d at 683 (emphasis added).

Commonwealth Court's reliance on this language from *Agostin* overlooks the fact that that case was decided when participation in the workers' compensation system was elective. Prior to 1974, Section 301(a) of the Workmen's Compensation Act provided:

> When employer and employee shall *by agreement, either express or implied, as hereinafter provided,* accept the provisions of article three of this act, compensation for personal injury to, or for the death of such an employe, by an injury in the course of his employment shall be paid in all cases by the employer, without regard to negligence, ac-

cording to the schedule contained in section three hundred and six and three hundred and seven of this article.

(Emphasis added). Section 302(a) established

In every contract of hiring ... *it shall be conclusively presumed that the parties have accepted the provisions* of article three of this act, and have agreed to be bound thereby, *unless there be*, at the time of the making, ... *an express statement*, in writing, from either party to the other, *that the provisions* of article three of this act *are not intended to apply.*

(Emphasis added).

It was in this context that *Agostin* and prior cases discussed the right to compensation under the Workmen's Compensation Act as being part of the employment contract. For example, in the *Agostin* opinion we cited *McIntyre v. E.J. Lavino & Co.*, 344 Pa. 163, 25 A.2d 163 (1942), when referring to Agostin's right to compensation as "a continuing unfulfilled obligation of his former contract of employment." 354 Pa. at 547, 47 A.2d at 682. In *McIntyre*, the worker was exposed to manganese dust until September 20, 1937, and became totally disabled from manganese poisoning in February of 1938. The employer argued that the Occupational Disease Compensation Act of 1937 did not apply because it became effective on January 1, 1938, after the employee's last exposure. We held that according to Section 3 of the Act, the date of injury was defined as the date of disability. Since that occurred after the effective date, the Act was not being retroactively applied. We further indicated that even if this construction were deemed to give retroactive application to the Act of 1937, it would not be unconstitutional:

The act was a supplement to the Workmen's Compensation Act and therefore part of a system of compensation not imposed by law but established by *agreement of the parties implied from their failure to express an intention to the contrary.* ... *When employer and employe accept compensation legislation, their relation in regard to it becomes contractual* and their rights are to be determined under its provisions.... Since, therefore, McIntyre was in the em-

ploy of the defendant on the effective date of the Occupational Disease Compensation Act, and the parties did not, then or thereafter, express their intention not to be bound by it, they voluntarily submitted themselves to its terms, including the provision of section 3, so that defendant assumed thereby the duty of paying compensation to McIntyre if disability from occupational disease should subsequently reveal itself.

344 Pa. at 168–69, 25 A.2d at 165–66 (emphasis added).

In 1974, Section 301(a) was amended to provide that, "Every employer shall be liable for compensation for personal injury to, or the death of each employe, by an injury in the course of his employment...." The references to agreements between employer and employee, either express or implied, and presumptions with regard to acceptance of the Act, were eliminated. The workers' compensation system as it is now structured is purely an exercise of the "police power" of the Commonwealth regulating the employeremployee relationship. As a result, there is no longer any basis for construing the provisions of the Workers' Compensation Act in contractual terms. And absent a contractual foundation, there is no basis for invoking the state or federal constitutional prohibitions against legislation impairing the obligations of contracts. Cf. *Pennsylvania Labor Relations Board v. Zelem*, 459 Pa. 399, 329 A.2d 477 (1974).

■ Because Commonwealth Court based its ruling on Article I, Section 17 of the Pennsylvania Constitution, it did not review the other allegations of unconstitutionality, which were based on due process. The appellees assert the due process arguments here as an alternative basis for affirming the order of the Commonwealth Court.[1] They argue that

1. The appellants argue, and we agree, that the appellees' constitutional challenge to the statute is not a facial challenge. The Act can be said to have a negative effect only as it is applied to some claimants—those who would have received 260 weeks of benefits for complete loss of hearing under the "for all practical intents and purposes" standard but would receive benefits for a reduced period under Act 1. In the case of claimants who could show a percentage loss but not a complete loss of hearing for all practical intents and purposes, application of Act 1

retroactive application of Act 1 violates due process because it alters the elements of the cause of action for hearing loss so substantially as to abrogate their claims for complete loss of use. They cite *Jenkins v. Hospital of the Medical College of Pennsylvania*, 535 Pa. 252, 634 A.2d 1099 (1993), and *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980). They also argue that their right to seek compensation "vested" at the time of injury and the law in effect at the time of injury must be followed.

In *Jenkins*, we held that a statute precluding a claim for damages based on "wrongful birth" could not extinguish a cause of action that had accrued prior to the effective date of the statute. In *Gibson*, we held that the sovereign immunity statute passed in 1978 could not be retroactively applied to causes of action that had accrued following our overruling of common law sovereign immunity in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). The appellees argue that they likewise have a vested right to pursue a "cause of action" for compensation for complete loss of hearing that could not be extinguished.

The flaw in this argument is that Act 1 did not extinguish a "cause of action" for compensation for complete loss of hearing. Rather, it created an "action" for compensation for partial loss of hearing, and substituted a legislatively defined method of determining hearing loss, including "complete" loss, for the judicial interpretation spawned by *Hartlieb*.

We have previously held that a person has no vested right arising out of a judicial interpretation of a statute so as to

would have a positive effect. Such claimants would receive compensation for some period of time rather than being precluded from compensation entirely. In that situation, it be would the employers who would be adversely affected by retroactive application of the Act.

The appellants are therefore correct in arguing that summary judgment in favor of the appellees was improper since resolution of the constitutional question in favor of any individual claimant depends upon a showing that the claimant would have prevailed under the old standard. Remand is unnecessary, however, because we determine that as a matter of law retroactive application of Act 1 was not unconstitutional and therefore the appellants are entitled to summary judgment in their favor.

prevent a later interpretation from applying to the facts of his case. In *Painter v. Baltimore & Ohio Railroad Co.*, 339 Pa. 271, 13 A.2d 396 (1940), the plaintiff brought an action under the Federal Employers' Liability Act for injuries sustained in March of 1928 while he was working as a carpenter at the railroad's Pittsburgh station. After noting that it was the plaintiff's burden to show that he was injured while engaging in activity related to interstate commerce, we cited a 1932 U.S. Supreme Court decision, *Chicago & E.I.R. Co. v. Industrial Commission of Illinois*, 284 U.S. 296, 52 S.Ct. 151, 76 L.Ed. 304 (1932), and held that the work involved was not sufficiently related to interstate commerce as to bring the case within the FELA. The plaintiff argued that at the time of the injury *Erie R.R. v. Collins*, 253 U.S. 77, 40 S.Ct. 450, 64 L.Ed. 790 (1920) and *Erie R.R. v. Szary*, 253 U.S. 86, 40 S.Ct. 454, 64 L.Ed. 794 (1920) were the controlling precedents regarding whether the type of work he was doing when injured was in interstate commerce. Therefore, *Chicago*, which overruled the two *Erie* cases, should not have been applied retroactively to his case. We rejected this argument, describing it as being based on "the false premise that plaintiff had acquired vested rights under the earlier cases although his claim had not yet been adjudicated...." 339 Pa. at 276, 13 A.2d at 398.

As noted previously, the Workers' Compensation Act constitutes social legislation enacted pursuant to the General Assembly's power to protect the general welfare of the people of the Commonwealth. Article III, Section 18 of the Pennsylvania Constitution specifically authorizes the General Assembly to

enact laws requiring the payment by employers, or employers and employees jointly, of reasonable compensation for injuries to employees arising in the course of their employment, and for occupational diseases of employees, whether or not such injuries or diseases result in death, and regardless of fault of employer or employee, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof....

With respect to the due process clause of the Fourteenth Amendment, the United States Supreme Court has stated that

legislative acts adjusting the benefits and burdens of economic life come to the Court with a presumption of constitutionality and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.... And this Court long ago upheld against due process attack the competence of Congress to allocate the interlocking economic rights and duties of employers and employees under workmen's compensation principles analogous to these enacted here....

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

*Usery* involved application of the Black Lung Benefits Act, 30 U.S.C. § 901 et seq., to miners who had left employment prior to the effective date of the act. Coal mine operators asserted that such retroactive application violated due process by imposing liability for past, completed acts. The Court wrote that "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations ... even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.* at 16, 96 S.Ct. at 2893 (citations omitted).

More recently, in *General Motors Corp. v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992), the Court rejected a due process challenge to retroactive application of changes in the Michigan workers' compensation statute. In 1981, the legislature enacted a benefits coordination statute that allowed employers to reduce workers' compensation payments by amounts paid through other employer-funded sources. General Motors Corporation and Ford Motor Corporation took the position that the statute allowed benefits coordination with respect to workers injured before its effective date. In 1985, the Michigan Supreme Court agreed, holding that the statute applied to all payment periods after the effective date, and such application to persons injured prior thereto did not violate due process. Thereafter, some employers who had not coordinated benefits for persons injured prior to 1981 began to

seek reimbursement from such persons. In response, in 1987 the Michigan legislature passed a bill requiring reimbursement of benefits that had been withheld as a result of coordination, thus putting employers who had coordinated benefits on the same footing as those who had not. Thus, General Motors and Ford were required to repay more than $25 million to persons who had been injured prior to 1981. They argued in the U.S. Supreme Court that the 1987 statute impaired their contracts with their employees, and that its retroactive application violated due process.

The Court acknowledged that "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." Nevertheless, the Court indicated that the due process test with respect to both prospective and retroactive aspects of legislation is "a legitimate legislative purpose furthered by rational means." 503 U.S. at 191, 112 S.Ct. at 1112. The Court found that this standard was met, noting that the purpose of the 1987 statute was to correct the unexpected results of the Michigan Supreme Court decision allowing coordination of benefits. The Court described retroactive repayment of benefits withheld due to coordination as a rational means of meeting this objective because it preserved the balance struck by the 1981 law and equalized the situation of those who had "gambled" on the decision allowing coordination of benefits and those who had not.

We have used the same reasonableness/balancing of interests analysis in applying the due process protections of the Pennsylvania Constitution. See *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983). There we observed that "[t]raditionally, retrospective laws which have been deemed reasonable are those which ' "impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted." ' " *Id.* at 382–83, 469 A.2d at 991 (citations omitted). Discussing this same principle at the turn of the century, we

quoted with approval the following from a treatise on statutory construction:

A law can be repealed by the law-giver; but the rights which have been acquired under it while it was in force, do not thereby cease. It would be an act of absolute injustice to abolish with the law all the effects which it had produced. This is a principle of general jurisprudence; but a right to be within its protection must be a vested right. *It must be something more than a mere expectation based upon an anticipated continuance of existing law. It must have become a title legal or equitable to the present or future enforcement of a demand, or a legal exemption from a demand made by another.*

*Lewis v. Pennsylvania R.R. Co.*, 220 Pa. 317, 324, 69 A. 821 (1908) (emphasis added).

We must conclude that the appellees' interest in the *Hartlieb* interpretation of "complete loss of hearing" was an "expectation based upon an anticipated continuance of existing law." No "title legal or equitable to the present or future enforcement of a demand" attached at the time of injury or at any time prior to an award of benefits. Put another way, the appellees have a recognizable interest in obtaining "reasonable compensation" for injuries arising in the course of their employment, not a right to compensation of a fixed amount. The right to receive compensation for hearing loss has not been impaired, only the remedy has been varied.

The General Assembly's decision with regard to retroactive application was a rational means to further a legitimate legislative purpose. The purpose of the changes, as described at the outset of this opinion, was to correct the inequities of application that followed in the wake of *Hartlieb* due to the subjective elements of proof with respect to this particular type of loss. One of the inequities to be corrected was the "all or nothing" nature of the decision. The legislative decision that the duration of compensation should be calculated according to an objectively determined percentage of impairment represented a rational means of correcting this inequity.

Application of the new standards to cases where no award had yet been made also represented a rational means of implementing a legitimate purpose. Had the changes been made applicable only to claims filed after the effective date of the Act, claimants who were aware of the pending legislation would have been able to obtain an advantage over those who were not. By filing a claim before the Act became effective, such claimants could "lock in" the opportunity to seek a full 260 weeks of benefits for hearing loss that, under the new standards, would merit a shorter period of benefits. We cannot say that the means chosen to avoid this potential windfall to some claimants was irrational.

For the foregoing reasons, the order of the Commonwealth Court granting summary judgment to the appellees is reversed and the case is remanded for entry of an order granting summary judgment in favor of the appellants.

NIX, Former C.J., and NEWMAN, J., did not participate in the consideration or decision of this case.